**IN RE Gene TIMBERLAKE, individually and on behalf of the Estate of Joan Hughes Timberlake, Relator**

NO. 14–15–00109–CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinions filed December 3, 2015

Rehearing and Rehearing En Banc Overruled December 18, 2015

James E. Doyle, N. Kimberly Hoesl, Houston, TX, for Relator

Rudolph Michael Culp, Linda C. Goehrs, David A. Furlow, Adrianne Graves, W. Cameron McCulloch, Houston, TX, for real party in interest

Panel consists of Justices Jamison, Busby, and Brown (Busby, J., dissenting).

## MAJORITY OPINION

Marc W. Brown, Justice

On February 9, 2015, relator Gene Timberlake, individually and on behalf of the Estate of Joan Hughes Timberlake, filed a petition for writ of mandamus in this Court. *See* Tex. Gov't Code Ann. § 22.221 (West 2004); *see also* Tex. R. App. P. 52. In the petition, relator asks this Court to compel the Honorable Mike Wood, presiding judge of the Probate Court No. 2 of Harris County, to vacate the trial court's September 18, 2013 order granting a new trial and to reinstate the trial court's June 14, 2013 final judgment. We deny relator's petition for writ of mandamus.

1. Cecelia is Joan's daughter-in-law, and served as Joan's attorney-in-fact under a power of attorney prior to Joan's death on May 6, 2008.

## BACKGROUND

The underlying action was initiated in September 2009 by relator, on his own behalf and on behalf of the Estate of Joan Hughes Timberlake—relator's step-mother. Relator sought to remove Cecelia Timberlake [1] as independent executrix and to recover damages for Cecelia's allegedly improper conduct with respect to Joan's assets both before and after Joan's death. Relator also sought damages from Ray Timberlake—relator's brother and Cecelia's husband—who relator contended knowingly participated in Cecelia's alleged breaches of fiduciary duty.

In April 2012, the trial court granted partial summary judgment in favor of Ray and Cecelia on several claims. The remaining claims were tried to a jury in September 2012. During trial, the trial court granted a directed verdict in favor of Ray and Cecelia on certain claims. The jury subsequently returned a unanimous verdict in favor of relator on all nine submitted issues.

On November 7, 2012, Ray and Cecelia filed a motion for new trial, or, alternatively, for judgment notwithstanding the verdict (the "2012 MNT/JNOV"). A hearing was held on November 27, 2012, at which the trial court heard argument concerning the portion of the motion requesting a judgment notwithstanding the verdict; however, the trial court recognized that the portion of the motion requesting a new trial was premature, as no final judgment had yet been signed.

On June 14, 2013, the trial court signed a final judgment. The final judgment granted, in part, Ray and Cecelia's motion for judgment notwithstanding the verdict. [2]

2. Specifically, the trial court agreed with Ray and Cecelia that there was no evidence to support the jury's findings on certain issues. As to the remainder of the issues, the trial

On July 12, 2013, Ray and Cecelia filed a second motion for new trial, or, alternatively, for judgment notwithstanding the verdict (the "2013 MNT/JNOV").

On September 18, 2013, the trial court signed an order granting Ray and Cecelia's 2013 MNT/JNOV. The new trial order set aside the entirety of the jury's verdict and vacated the court's June 14, 2013 final judgment. The new trial order stated that the partial summary judgment and directed verdict rulings granted before the jury's verdict in favor of Cecelia and Ray were thereby severed and made final, with the result that only the claims that Ray and Cecelia lost were to be re-tried.

Relator subsequently filed a motion for reconsideration, which was orally denied by the trial court on October 8, 2013. On November 4, 2013, relator requested the preparation of the reporter's record, which was completed on March 3, 2014. The instant mandamus petition was not filed until February 9, 2015—over 11 months after the record was completed, and nearly 17 months after the order granting a new trial was signed.

## ANALYSIS

In three issues, relator contends that the trial court erred by granting a new trial because: (1) there is legally and factually sufficient evidence to support the jury's answers to all nine issues in the jury charge;[3] (2) the new trial was granted in part on legally impermissible grounds—specifically, that a new trial was necessary because the jury was not permitted to learn of Ray and Cecelia's partial summary judgment and directed verdict victories; and (3) the new trial order was signed after the trial court lost plenary power to grant a new trial and was therefore void.

Ray and Cecelia responded that relator's claims were barred by laches or, alternatively, that the trial court did not abuse its discretion by granting a new trial.

## I. Laches

 Mandamus is an extraordinary remedy, not issued as a matter of right, but at the discretion of the court. *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex.1993). Although mandamus is not an equitable remedy, its issuance is largely controlled by equitable principles, including the principle that equity aids the diligent and not those who slumber on their rights. *Id.* Therefore, "delay alone can provide ample ground to deny mandamus relief." *In re Boehme*, 256 S.W.3d 878, 887 (Tex.App.–Houston [14th Dist.] 2008, orig. proceeding); *see also In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 676 (Tex.2009) (per curiam) (orig.proceeding) ("[D]elaying the filing of a petition for mandamus relief may waive the right to mandamus unless the relator can justify the delay."); *In re E. Tex. Salt Water Disposal Co.*, 72 S.W.3d 445, 448 (Tex. App.–Tyler 2002, orig. proceeding) ("Texas courts often deny mandamus relief on the

---

court found that Cecelia was determined by a jury to be guilty of gross misconduct or gross mismanagement in the performance of her duties as independent executrix; to have breached her fiduciary duty to both the estate and to relator; and to have defended the motion to remove her in bad faith. The trial court ordered Cecelia removed as independent executrix and named relator as successor administrator. The trial court ordered that Ray be jointly and severally liable with

Cecelia and entered judgment against them for $404,404.83.

3. Relator contends there is support for the jury's findings on all nine issues; however, relator requests this Court to reinstate the trial court's June 14, 2013 final judgment, which set aside the jury's findings on issues 1, 6, 7, and 8.

basis of delay alone."); *In re Xeller,* 6 S.W.3d 618, 624 (Tex.App.–Houston [14th Dist.] 1999, orig. proceeding) ("Delay alone provides ample ground to deny mandamus relief. . . . Because relators waited sixteen months to seek mandamus relief from the appointment of a master, we hold that mandamus relief on that basis is barred by laches."); *Int'l Awards, Inc. v. Medina,* 900 S.W.2d 934, 935–36 (Tex.App.–Amarillo 1995, orig. proceeding) ("Why [relator] waited more than four months from the date severance was ordered, and until the eve of trial, to petition for relief went unexplained. Moreover, such a delay alone provides ample ground to deny leave to petition for mandamus relief.").

■ In the instant suit, relator waited nearly 17 months from the trial court's granting of new trial to file his petition for writ of mandamus. Even discounting the time for preparation of the record, relator still waited more than 11 months after the record was completed to file his petition. The only explanation relator offers for the delay is that his counsel was busy and was also running for a judicial position, and that the petition required extensive time to draft and revise. We do not find such explanation sufficient to justify the delay. *See, e.g., In re Little,* 998 S.W.2d 287, 290 (Tex.App.–Houston [1st Dist.] 1999, orig. proceeding) (attorney's busy schedule was insufficient justification for delay). Accordingly, we conclude that because relator waited approximately 17 months from the signing of the order to seek mandamus relief, relator's first and second issues are barred by laches. *See, e.g., Rivercenter Assocs.,* 858 S.W.2d at 367–68 (four month delay sufficient to deny); *In re Little,* 998 S.W.2d at 290 (six month delay sufficient to deny); *Furr's Supermarkets, Inc. v. Mulanax,* 897 S.W.2d 442, 443 (Tex.App.–El Paso 1995, orig. proceeding) (four month delay sufficient to deny).

## II. Plenary Period

■ Our determination that laches bars relator's claims does not end our inquiry, because laches is not a bar to mandamus relief where the requested relief is premised on the entry of a void order. *See In re Choice! Energy, L.P.,* 325 S.W.3d 805, 810 (Tex.App.–Houston [14th Dist.] 2010, orig. proceeding). In his third issue, relator contends that the trial court's order granting a new trial is void because it was signed after the trial court's plenary power expired. Mandamus relief is appropriate when a trial court issues an order after its plenary power has expired because such an order is void. *In re Brookshire Grocery Co.,* 250 S.W.3d 66, 68 (Tex. 2008) (orig.proceeding); *In re Sw. Bell Tel. Co.,* 35 S.W.3d 602, 605 (Tex.2000) (orig.proceeding). Accordingly, we must determine whether the trial court had plenary power to grant a new trial on the 97th day after the trial court's final judgment was signed.

The chronology of relevant events follows:

**September 24, 2012:** The jury returns its verdict in favor of relator.

**November 7, 2012:** Ray and Cecelia file the 2012 MNT/JNOV.

**June 14, 2013:** The trial court signs its final judgment.

**July 12, 2013:** Ray and Cecelia file the 2013 MNT/JNOV.

**July 14, 2013:** 30th day after signing of final judgment; the trial court's plenary power would otherwise expire on this date absent a motion extending the plenary period. *See* Tex. R. Civ. P. 329b(d), (e), (g).

**August 28, 2013:** 75th day after signing of final judgment; a timely filed motion for new trial not previously denied is

deemed overruled by operation of law on this date. *See* Tex. R. Civ. P. 329b(c).

**September 18, 2013:** The trial court signs order granting Ray and Cecelia's second motion for new trial.

**September 27, 2013:** 105th day after signing of final judgment; this is the last possible day of a trial court's plenary period to grant a new trial or vacate, modify, correct, or reform the judgment, assuming a motion for new trial was filed and overruled—either explicitly or by operation of law—on the 75th day after the signing of the final judgment. *See Lane Bank Equip. Co. v. Smith S. Equip., Inc.,* 10 S.W.3d 308, 310 (Tex. 2000); Tex. R. Civ. P. 329b(c), (e).

Relator offers several arguments why the trial court's order granting a new trial on September 18, 2013, is void. First, relator contends that the trial court's plenary power expired on July 14, 2013—30 days after the signing of the final judgment—because either: (a) the trial court intended to deny the new trial component of the 2012 MNT/JNOV and did so orally during a hearing on the motion; or (b) the trial court impliedly denied the motion for new trial component of the 2012 MNT/JNOV when it signed its final judgment granting in part the requested judgment notwithstanding the verdict. Alternatively, relator contends that the 2013 MNT/JNOV was overruled by operation of law on the 75th day and could not thereafter be granted. We find both arguments unpersuasive.

■ Relator's argument that the trial court's plenary power expired 30 days after the signing of final judgment hinges on a finding that the motion for new trial component of the 2012 MNT/JNOV was deemed denied prior to or on the date of signing of the final judgment. In that case, the 2013 MNT/JNOV would not extend the plenary period because it would have been filed without leave of court after a previous motion for new trial was overruled. *See* Tex. R. Civ. P. 329b(b) ("One or more amended motions for new trial may be filed without leave of court *before any preceding motion for new trial filed by the movant is overruled* and within thirty days after the judgment or other order complained of is signed.") (emphasis added). However, the trial court's final judgment makes no mention of the motion for new trial, and we find no indication that the trial court otherwise explicitly denied or intended to deny the motion for new trial component of the 2012 MNT/JNOV.[4]

Relator contends that the following statements made by the trial court during its hearing on the 2012 MNT/JNOV demonstrate that the court intended to deny the motion for new trial component:

> THE COURT: All right. Well, I think the orderly way to do this is I've got to consider any judgment by the defendants or any motion by the defendants for judgment NOV or to disregard any findings. That's got to be done first. And then depending on what I do there,

---

**4.** This situation is distinguishable from that encountered by the Texas Supreme Court in *In re Brookshire Grocery Co.,* 250 S.W.3d at 68. In that case, as in this case, the real party filed a motion for new trial prior to the entry of final judgment. *Id.* There, however, the trial court explicitly denied the motion for new trial in an order signed *after* it signed its final judgment. *Id.* The Texas Supreme Court held that, where the trial court has explicitly denied a motion for new trial, an amended motion for new trial filed within 30 days of judgment will not extend the trial court's plenary power. *See id.* at 69. Here, the trial court never explicitly denied either the 2012 MNT/JNOV or the 2013 MNT/JNOV, and while we do not believe the trial court impliedly denied the motion for new trial, any such implied denial was necessarily made before the trial court signed the final judgment.

then we've got to enter a judgment. And then there's a motion for new trial, right?

\* \* \*

THE COURT: And then once I sign a judgment, then you can file your motion for new trial and then you go on down that road.

We do not read the above statements as demonstrating a clear intent by the trial court to deny the motion for new trial component of the 2012 MNT/JNOV. To the contrary, those statements indicate that the trial judge was not ruling on the motion for new trial at the time he entered the judgment. Even had the trial court intended to deny the motion for new trial in its final judgment, such denial would be premature. Rule 306c of the Texas Rules of Civil Procedure provides in relevant part, "No motion for new trial ... shall be held ineffective because prematurely filed; but every such motion shall be deemed to have been filed on the date of but subsequent to the time of signing of the judgment the motion assails,...." Tex. R. Civ. P. 306c. Therefore, the motion for new trial component of the 2012 MNT/JNOV was deemed filed subsequent to the court's signing of its final judgment. *See id.* Because Rule 306c deems a prematurely filed motion for new trial to have been filed "*subsequent* to the time of signing of the judgment," we further conclude that the trial court could not have denied such a motion prior to or via its final judgment, as the motion was not yet considered filed. *See id.; but see Linan v. Padron,* No. 13–10–00070–CV, 2010 WL 3180278, at \*1–4 (Tex.App.–Corpus Christi Aug. 12, 2010, no pet.) (mem.op.) (where

trial court expressly denied prematurely filed motion for new trial before signing judgment, court of appeals concluded that the date of judgment became the effective date for the previous order denying the motion for new trial).

Likewise, the trial court could not have impliedly denied the motion for new trial when it partially granted the judgment notwithstanding the verdict in its final judgment, as the motion for new trial portion was not considered filed until after the trial court signed the final judgment. *See* Tex. R. Civ. P. 306c. Accordingly, we conclude that neither the 2012 MNT/JNOV nor the 2013 MNT/JNOV was ever expressly denied, and that the trial court's plenary power therefore continued for 105 days after the signing of the final judgment—75 days to the denial of the motions by operation of law, and then 30 days beyond. *See L.M. Healthcare, Inc. v. Childs,* 929 S.W.2d 442, 444 (Tex.1996).

In his alternative argument, relator contends the trial court is prohibited from granting a motion for new trial that has previously been overruled by operation of law. Relator argues that, even assuming the trial court did not deny any motion for new trial, both the 2012 MNT/JNOV and the 2013 MNT/JNOV were overruled by operation of law on August 28, 2013, the 75th day after the entry of the final judgment. Because we have determined above that the trial court did not explicitly or implicitly deny either motion for new trial, this is a correct statement of the law. *See* Tex.R. Civ. P. 329b(c).[5] Relator, citing to Texas Rule of Civil Procedure 329b(e), then contends that "the trial court's plenary power extended to September 28, 2013, during which time it had jurisdiction to

---

5. "In the event an original or amended motion for new trial or a motion to modify, correct or reform a judgment is not determined by written order signed within seventy-

five days after the judgment was signed, it shall be considered overruled by operation of law on expiration of that period."

vacate, modify, correct or reform the judgment," but that the trial court did not have authority to grant a motion for new trial that was previously overruled by operation of law.

Relator argues that to allow a motion for new trial to be overruled by operation of law, and then for the trial court to subsequently grant it in the 30–day plenary power window following the overruling would impermissibly extend the time table relating to new trials, which a trial court is prohibited from doing under Rule 5. *See* Tex. R. Civ. P. 5 (stating in relevant part that "[t]he court may not enlarge the period for taking any action under the rules relating to new trials except as stated in these rules."). Relator contends that "[w]hile the trial court does have plenary power for thirty days after the overruling, its actions must be in response to a new motion, either by the parties or on its own. If the 75–day cut-off to overrule a motion for new trial by operation of law is to have any significance at all, a trial court should not be permitted to grant a motion for new trial once it has been overruled by operation of law."

■ Relator omits and his argument ignores a relevant portion of Rule 329b(e), which states in its entirety: "If a motion for new trial is timely filed by any party, the trial court, regardless of whether an appeal has been perfected, has plenary power *to grant a new trial* or to vacate, modify, correct, or reform the judgment until thirty days after all such timely-filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first." Tex. R. Civ. P.

329b(e) (emphasis added). Accordingly, Rule 329b(e) specifically allows a trial court to grant a new trial after all motions for new trial are overruled by operation of law. *See id.* The rule does not limit the grant of a new trial to only those issues raised after any prior motions are overruled. *See id.*

■ Moreover, relator's argument is contrary to case law.[6] *See, e.g., In re Brookshire Grocery Co.,* 250 S.W.3d at 72 ("Our holding today does not preclude a party whose motion for new trial has been overruled from continuing to seek a new trial while the trial court is still empowered to act. Pursuant to Rule 329b(e), the trial court retains plenary power for thirty days after overruling a motion for new trial; thus, the losing party may ask the trial court to reconsider its order denying a new trial—or the court may grant a new trial on its own initiative—so long as the court issues an order granting new trial within its period of plenary power."); *In re Old Am. Cty. Mut. Fire Ins. Co.,* No. 13-13–00644–CV, 2014 WL 1633098, at *5 (Tex.App.–Corpus Christi Apr. 23, 2014, orig. proceeding) (mem.op.) (order not void where motion for new trial was overruled by operation of law but trial court subsequently granted the motion prior to the expiration of the 105–day period); *Gallagher v. Willows at Sherman Assisted Living & Memory Care, LP,* 244 S.W.3d 646, 648 (Tex.App.–Dallas 2008, no pet.) ("Willows urges that the trial court's May 16, 2006 order granting Gallagher's motion for new trial was also void because it was signed more than 75 days after the date

---

**6.** Relator bases his argument in part on this Court's statement in *Cortland Line Company, Inc. v. Israel* that "[a]n order granting a motion for new trial is not effective unless signed within 75 days after the judgment is signed." 874 S.W.2d 178, 182 (Tex.App.–Houston [14th Dist.] 1994, writ denied). This is an incorrect statement of law, *see, generally, In re Brookshire Grocery Co.,* 250 S.W.3d at 72, and although we approve of the holding in *Cortland,* we disapprove of the statement in *Cortland* that an order granting a motion for new trial must be signed within 75 days of final judgment.

the judgment was signed. This is incorrect. Gallagher's motion for new trial was overruled by operation of law under Rule 329b(c), but the trial court's plenary power over its judgment lasted for 30 more days after that by virtue of Rule 329b(e). As we specifically noted in our original opinion, the trial court signed the May 16, 2006 order within that period of plenary power."); *Julian v. Hoffman,* 520 S.W.2d 935, 936 (Tex.Civ.App.–Dallas 1975, no writ) ("June 27, 1974, would be the forty-fifth day following the filing of the amended motion for new trial and since the motion was not expressly acted upon by the trial court it was overruled by operation of law on such date, June 27, 1974. Judge Hoffman granted the motion for new trial on July 22, 1974, and within the time allowed by law for the trial court to sustain a motion for new trial and set aside the judgment. It is established law that a trial court has jurisdiction to grant a new trial within thirty days after a motion for new trial has been overruled either by order or by operation of law."). Accordingly, we conclude that a trial court can grant a motion for new trial after it has been overruled by operation of law, so long as the order granting new trial is signed within the plenary period.

Based on the foregoing, we conclude that the trial court did not explicitly or implicitly deny either motion for new trial, and that it was therefore within the trial court's power to grant the motion for new trial on September 18, 2013.

### CONCLUSION

We conclude that the trial court's order granting a new trial was not void, and we deny relator mandamus relief as a result of relator's unjustified 17–month delay in filing his mandamus petition.

J. Brett Busby, Justice, dissenting.

The proper disposition of this petition turns on a straightforward question of civil procedure: whether we should give effect to the plain language of (1) Texas Rule of Civil Procedure 329b(a), which authorized real parties Ray and Cecilia Timberlake to "file[ ]" their November 7, 2012 "motion for new trial ... prior to ... the judgment"; and (2) the trial court's ruling, as part of its June 14, 2013 judgment in favor of relator Gene Timberlake, that "all other and further relief sought by any party ... is hereby DENIED." If this ruling denied the motion for new trial, then under supreme court precedent, Ray and Cecilia's second motion for new trial (filed without leave on July 12, 2013) did not extend the trial court's plenary power, which expired July 15, 2013. *See* Tex. R. Civ. P. 4, 329b(b), (e); *In re Brookshire Grocery Co.,* 250 S.W.3d 66, 69 (Tex.2008) (orig.proceeding). As a result, the new trial order signed September 18, 2013 is void, and Gene is entitled to mandamus relief. *In re Dickason,* 987 S.W.2d 570, 571 (Tex.1998) (per curiam).

My colleagues in the majority try to avoid this result by acting as though the first motion for new trial did not exist at the time of judgment because, under Texas Rule of Civil Procedure 306c, it was "deemed to have been filed on the date of but subsequent to the time of signing of the judgment." According to the majority, "the trial court *could not have* denied such a motion prior to or via its final judgment, as the motion was not yet considered filed." *Ante,* at 9 (emphasis added). Because this conclusion is contrary to decisions of the Supreme Court of Texas and this Court, conflicts with the plain language of the applicable rules and the trial court's judgment, and creates an anomalous hole in the trial court's plenary power to decide motions on file, it undermines the

certainty and predictability that citizens rightly expect of the legal process. I respectfully dissent.

Rule 329b, which governs motions for new trial, provides that a motion "shall be filed *prior to* or within thirty days after the judgment or other order complained of is signed," and it gives the trial court *"plenary power* to grant a new trial ... until thirty days after [the timely-filed motion is] overruled...." Tex. R. Civ. P. 329b(a), (e) (emphasis added). Ray and Cecilia filed their first motion for new trial before judgment in compliance with this rule, giving the trial court plenary power over that motion. *See also Scott & White Mem'l Hosp. v. Schexnider*, 940 S.W.2d 594, 596 (Tex.1996) (per curiam) (recognizing general rule that trial court has "power to decide any ... motion during its plenary jurisdiction").

At the hearing on the motion, the trial court stated its intention to proceed in an "orderly way" by "consider[ing] any judgment ... first," then "sign[ing] a judgment, and "then you can file your motion for new trial and ... go on down that road." The trial court's subsequent judgment "ORDERED ... that all other and further relief sought by any party in this cause not otherwise granted in this Judgment is hereby DENIED." Ray and Cecilia apparently interpreted this language as denying their motion for new trial because they later filed a second motion for new trial, just as the trial court had suggested at the hearing.

Ray and Cecilia's conclusion that the trial court had denied their motion is surely a correct reading of the judgment's plain language: Ray and Cecilia are "part[ies]," their motion for new trial sought "relief," and nothing else in the judgment purported to grant that motion. Of course, courts are reluctant to conclude that such "Mother Hubbard" language in a judgment or order rendered without a trial finally disposes of the case because in that context, the language can be ambiguous.[1] But no such reluctance applies to Mother Hubbard language in judgments rendered after a trial (as this one was),[2] and as just explained, there is no ambiguity regarding whether this particular judgment denies Ray and Cecilia's motion for new trial.

The majority does not acknowledge the judgment's language, much less dispute that it would encompass a pending motion for new trial. Instead, the majority concludes that the trial court's oral statements at the hearing "indicate" that the court, despite the plain language of its judgment, did not really "inten[d] to deny the motion for new trial." *Ante*, at 9. But the majority misreads those statements. If the trial court had intended to leave the previously filed motion for new trial pending, the court would not have said "once I sign a judgment, *then* you can *file* your motion for new trial" (emphasis added).

Even if the majority's reading of the trial court's oral statements were also reasonable, the majority fails to explain how such ambiguity can provide a basis for disregarding the plain language of the written judgment. It is not an appellate court's function to search the reporter's record for scraps of oral commentary from which to construct an "intent" by the trial

1. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 203–04 (Tex.2001).

2. *See, e.g., John v. Marshall Health Servs., Inc.*, 58 S.W.3d 738, 740 (Tex.2001) (per curiam) (applying presumption that judgment rendered after trial is final); *Stephens v. Dallas Area Rapid Transit*, 50 S.W.3d 621, 627 (Tex.App.–Dallas 2001, pet. denied); *Mendoza v. City of Houston*, No. 14-01-00363-CV, 2001 WL 520912, at *2 n. 1 (Tex.App.–Houston [14th Dist.] May 17, 2001, no pet.) (not designated for publication).

court that differs from the plain words of its written order, especially given that orders on motions for new trial must be in writing. Tex. R. Civ. P. 329b(c). This Court has long recognized that "we cannot look to the trial court's oral comments to change the written order. It is the court's order that counts, not the stated reason or oral qualifications." *Richardson v. Johnson & Higgins of Tex., Inc.,* 905 S.W.2d 9, 11 (Tex.App.–Houston [1st Dist.] 1995, writ denied); *see also Clay Expl., Inc. v. Santa Rosa Operating, LLC,* 442 S.W.3d 795, 799 n. 6 (Tex.App.–Houston [14th Dist.] 2014, no pet.).

The rule that oral statements cannot alter unambiguous documents is not unique to written court orders: it also applies to statutes and contracts. *E.g, City of Rockwall v. Hughes,* 246 S.W.3d 621, 626 (Tex.2008) ("When a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language."); *Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 747 (Tex.2006) ("When the terms of a contract are clear, a party may not introduce parol evidence to create ambiguity."). The rule is a sound one because, among other benefits, it "ensures that ordinary citizens are able to rely on the language ... to mean what it says." *Fitzgerald v. Advanced Spine Fixation Sys.,* 996 S.W.2d 864, 866 (Tex.1999). The majority's approach, in contrast, condemns the parties to uncertainty. *Cf. Richardson,* 905 S.W.2d at 12 (observing that rule against using oral comments to change written order "has the prophylactic effect of eliminating disputes over the plain meaning of a court's formal order or judgment").

Given that binding precedent prohibits the use of oral comments (especially ambiguous ones) to alter a written order, the majority also takes a fall-back position:

the trial court's judgment "could not have" disposed of the motion for new trial because that "motion was not yet considered filed" under Rule 306c. *Ante,* at 9. That position rests on a misinterpretation of Rule 306c and related rules that is likewise foreclosed by binding precedent.

Rule 306c provides in pertinent part: "No motion for new trial ... shall be held ineffective because prematurely filed; but every such motion shall be deemed to have been filed on the date of but subsequent to the time of signing of the judgment the motion assails...." Tex. R. Civ. P. 306c. Relying on the portion of the rule after the semicolon, the majority reasons that Ray and Cecilia's first motion for new trial was deemed filed subsequent to the signing of the judgment, so the court could not have denied it in the judgment.

This reasoning ignores Rule 329b(a)'s express permission to file a motion for new trial before judgment, as well as the statement at the beginning of Rule 306c that such a filing is not ineffective. In addition, the majority fails to recognize that the function of Rule 306c's "deemed" date and time of filing is not to deprive the trial court of its plenary power to act on a motion for new trial prior to that time. Rather, this deemed filing time avoids procedural traps by (1) clarifying that a motion for new trial can preserve complaints regarding a subsequent judgment, and (2) simplifying the calculation of the deadline to appeal. *See, e.g., Ryland Enter., Inc. v. Weatherspoon,* 355 S.W.3d 664, 665–66 (Tex.2011) (per curiam); *Padilla v. LaFrance,* 907 S.W.2d 454, 458 (Tex.1995). Neither of those functions is implicated here. To the contrary, the majority's view that a trial court cannot act before the deemed filing time will foster complexity and inefficiency, preventing the court not only from denying but also from *granting* a motion for new trial before judgment.

Finally, the majority's conclusion that a trial court cannot dispose of a motion for new trial prior to or via its final judgment conflicts with decisions of the Supreme Court of Texas, this Court, and other courts of appeals. In *Wilkins v. Methodist Health Care System,* 160 S.W.3d 559, 562–63 (Tex.2005), the supreme court recognized a trial court's ability to grant or deny a motion for new trial prior to judgment and concluded that the motion need not be "live" in order to assail a subsequent judgment for error-preservation and deadline-calculation purposes. *See also Fredonia State Bank v. Gen. Am. Life Ins. Co.,* 881 S.W.2d 279, 282 (Tex.1994). If the motion has become moot because all relief sought is subsequently granted, however, the motion will not assail a subsequent judgment. *Wilkins,* 160 S.W.3d at 563–64.

The supreme court based its conclusion on a decision of our sister court. In *Harris County Hospital District v. Estrada,* a party filed a motion for new trial before judgment, and the trial court first granted but subsequently denied the motion. 831 S.W.2d 876, 877–78 (Tex.App.–Houston [1st Dist.] 1992, no writ). The trial court then signed a final judgment, and the appellant filed a notice of appeal more than 30 but less than 90 days after the judgment. *Id.* at 878. The First Court held that although the motion for new trial "had been expressly overruled by signed written order before the judgment was signed," the "timetable [to appeal] was extended." *Id.* Analyzing Rule 306c, as well as the predecessor to Texas Rule of Appellate Procedure 27, the court observed:

> The Texas Supreme Court has twice enacted rules to assure that cases are not dismissed because the motion for new trial was filed too soon. Neither of those rules limits their application to 'live' pleadings.... [G]iven the reasons for having [these rules], we find no significant difference between a premature motion that has been prematurely overruled, as in this case, and a premature motion that has not been prematurely overruled.

*Id.* at 880. The court therefore held that "when the trial judge denies some or all relief sought in a premature motion for new trial, the motion can 'assail' those particular parts of a subsequent judgment ... [and] extends the deadline to appeal." *Id.*

This Court followed *Estrada* in *Nuchia v. Woodruff,* 956 S.W.2d 612 (Tex.App.–Houston [14th Dist.] 1997, pet. denied). We held that the appellant's motion for new trial filed in April 1995 and "overruled nearly five months prior to the final judgment ... should be considered applicable to the final judgment signed on October 5, 1995." *Id.* at 614. Relying on *Estrada,* we rejected the appellee's argument the motion did not assail the judgment "because it was overruled before the judgment was signed and therefore was not a live pleading." *Id.*[3] We therefore concluded that "the [appellant's] motion was deemed filed on October 5, 1995, after the final judgment was signed, and extended the time for filing the transcript" on appeal. *Id.* at 615.

In *Linan v. Padron,* the Corpus Christi Court of Appeals reached the same conclusion regarding the interplay between Rule 306c's deemed filing provision and the denial of a motion for new trial prior to judgment. No. 13–10–00070–CV, 2010 WL 3180278 (Tex.App.–Corpus Christi Aug. 12,

---

**3.** If the majority were correct that a trial court cannot act on a motion for new trial before judgment, the new trial motions in *Wilkins, Estrada,* and *Nuchia* would still have been live. Thus, it would have been unnecessary for the courts to consider whether a motion for new trial that was no longer live could assail a subsequent judgment.

2010, no pet.). As the court explained, "[w]hen the trial court entered judgment on May 19, 2009, that became the effective date for the previous order denying appellant's early-filed motion for new trial." *Id.* at *4. As a result, "[t]he trial court's July 31 order granting a new trial more than thirty days after the first motion for new trial was overruled was void." *Id.*

I would follow the decisions and rules discussed above by holding that Ray and Cecilia's first motion for new trial was deemed filed and denied after the judgment was signed on June 14, 2013. Therefore, the trial court's plenary power expired on July 15, the court's subsequent order purporting to grant a new trial is void, and Gene is entitled to mandamus relief.

The majority's silent decision not to follow these binding authorities, as well as its reliance on unclear oral statements by a trial court to create an "intent" contrary to the plain language of a written order, strike at the values of certainty and predictability that are critical to the legitimacy of our justice system. "Requiring the application of law ... does more than simply provide citizens notice ...; it also helps to assure the uniform general treatment of similarly situated persons that is the essence of law itself." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 587, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). As the Supreme Court of Texas has explained:

> It does not follow that this Court, or any court, is entitled to apply or not apply the rules of law according to preference in the individual case. Those who depend upon the law require continuity and predictability. If the administration of justice is to be effective in the trial courts, the rules must not be constantly shuffled.

*Davis v. Davis*, 521 S.W.2d 603, 608 (Tex. 1975). Because the rules require that this petition be granted, I respectfully dissent.